# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# (*Danville Division*)

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **4:18-CR-00011** |
| | ) | |
| | ) | |
| **DASHAUN LAMAR TRENT** | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Dashaun Lamar Trent is before this Court, having entered a plea of guilty to one count of racketeering conspiracy and one count of violent crime in aid of racketeering for the attempted murder of Tyliek Conway. The racketeering count carries a maximum sentence of up to a term of life in prison.[1] The VICAR attempted murder count carries up to a maximum sentence of up to a term of TEN (10) years in prison.[2] Based on a Total Offense Level of 31, a criminal history category of II, and the nature of the offense, the recommended Guidelines range for imprisonment is 121 to 151.[3] Mr. Trent respectfully submits this memorandum in support of his request that the Court impose a sentence of ONE-HUNDRED-FIFTY-SIX (156) MONTHS, plus a term of supervised release of not more than FIVE (5) years.[4]

---

[1] 18 U.S.C. § 1962(d) and 18 U.S.C. § 1963.

[2] 18 U.S.C. § 1959(a)(5).

[3] This Guideline range is the calculation of counsel for Mr. Trent. The Presentence Investigation Report (hereinafter "PSIR") calls for Guideline range for of a term of life at ¶123.

[4] 18 U.S.C. § 3583(b)(1).

## I.  Factual background

Dashaun Lamar Trent stands convicted of one count of racketeering conspiracy[5] and one count of VICAR attempted murder.[6]  Mr. Trent was a member of the Rollin60s, a violent street gang.  The PSIR, Statement of Facts,[7] and Mr. Trent's Plea Agreement[8] all provide a broader overview of the nature of the conspiracy and the facts surrounding the attempted murder of Tyliek Conway.  There is no doubt that Mr. Trent was engaged in very serious and dangerous (to the community of Danville) criminal activity.  As noted in the Statement of Facts, the purpose of the Rollin60s as a criminal enterprise included: "acts of violence, including murder; [attempted murder]; trafficking in firearms; and trafficking in controlled substances; enforcing discipline among the members; providing assistance to members of the enterprise . . .; and thwarting efforts of law enforcement to apprehend enterprise members."[9]  As further specifically noted in the Statement of Facts (authored by the United States), Mr. Trent "was involved in attempted murders, committed by the enterprise, as well as drug trafficking committed by the enterprise."[10]

The specifics of the "attempted murders" and "drug trafficking" with which Mr. Trent was involved are as follows:

---

[5]  18 U.S.C. § 1962(d) and 18 U.S.C. § 1963.

[6]  18 U.S.C. § 1959(a)(5).

[7]  ECF 1018.

[8]  ECF 1016.

[9]  Statement of Facts, ECF 10 at page 1.

[10]  Statement of Facts at page 2.

**(A) Attempted Murder of Tyliek Conway**

On August 24, 2016, TRENT, Phillip Miles (a/k/a "R"), Kevin Trent (a/k/a "Bad Ass" or "Gates"), Laquante Adams (a/k/a "Spazz"), and Tyson Bowens (a/k/a "Ty Sav") were riding in Miles's black Chevy Impala on Jefferson Street in Danville, Virginia. Miles was driving. Miles made a statement, and all individuals in the vehicle looked over and saw Tyliek Conway (a/k/a "Smooth") and Demarcus Whitehead (a/k/a "Youngun") both of whom are rival Billys Bloods, walk out of the JiffyMart. The JiffyMart is in the "800" neighborhood, which is Rollin 60s territory.

Kevin Trent jumped out of the vehicle and began firing a pistol. TRENT opened his door and began firing a pistol as well. TRENT's intent was to kill Conway and Whitehead. Kevin Trent ran towards Conway and Whitehead while firing his pistol before running away. TRENT then shut his door before Miles drove the vehicle away to Cabell Street, where the group hid from the police.

**(B) Conspiracy to Distribute Controlled Substances**

During and in furtherance of the conspiracy, TRENT conspired with others to distribute, and did in fact distribute, marijuana on behalf of the racketeering enterprise. Phillip Miles (a/k/a "R") supplied marijuana to TRENT, among others.

Mr. Trent accepted responsibility for his conduct by entering a plea of guilty to Count One and Count XVI of the Superseding Indictment on October 23, 2020. "[O]n March 18, 2018, he was arrested on related states charges."[11] Mr. Trent has been in continuous custody (either state or federal) since that date. "According to the U.S. Marshal Service,

---

[11] PSIR at page 2.

he was [brought into federal cusotdy] via writ but his state sentence expired on May 15, 2020, and he has been in primary federal custody since" that time without incident.[12]

## II. Sentencing Standard

Following *United States v. Booker*,[13] federal judges no longer are required to turn a blind eye to Congress's admonition that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." [14] The sentencing guidelines are advisory, and in light of more recent Supreme Court holdings - truly advisory. While sentences that adhere to the sentencing guidelines are presumptively reasonable, sentences that deviate from the advisory range are neither presumptively reasonable not presumptively unreasonable.[15] A sentencing court must make an independent determination of an appropriate sentence based on all of the 18 U.S.C. Section3553(a) factors without any "thumb on the scale favoring a guideline sentence"[16] and keeping in mind that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every person

---

[12] PSIR at page 2.

[13] 543 U.S. 220 (2005).

[14] 18 U.S.C. § 3661.

[15] *Gall v. United States*, 128 S. Ct. 586 (2007).

[16] *United States v. Sachsenmaier*, 491 F. 3d 680, 685 (7th Cir. 2007).

as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."[17]

The primary mandate of 18 U.S.C. § 3553(a) is that the District Court impose a sentence "**sufficient**, **but not greater than necessary**, to comply with the purposes" of punishment as set forth in subdivision (a)(2) of the statute.[18] The four purposes identified are: punitive ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence, incapacitation ("to protect the public from further crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). In determining a sentence that is **sufficient, but not greater than necessary**, the Court is directed to also consider several other factors: the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the advisory sentencing guideline range, the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution.[19]

### III. Calculations Under The Advisory Guidelines

As set forth in his Plea Agreement,[20] under the structural requirements of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, this Court is required to sentence Your Defendant to a term of not less than 156 months nor greater than 180 months. Mr.

---

[17]    *Koon v. United States*, 518 U.S. 81, 113 (1996).

[18]    18 U.S.C. § 3553(a). [emphasis added]

[19]    18 U.S.C. § 3553(a).

[20]    ECF 1016.

Trent's plea agreement also sets forth an agreement between the United States and him that he "will be permitted to request at the time of sentencing that [his] federal sentence run concurrently to any state sentence in *Commonwealth v. Dashaun Lamar Trent*, case [number] CR18000487 and CR18000488, from the Danville Circuit Court and that the United States will not object to this request."[21]

Counsel for Mr. Trent's avers that the combined adjusted offense level under the guidelines is 33.[22] The combined adjusted offense level is then decreased by a total of two levels for Mr. Trent's acceptance of responsibility.[23] Therefore, the total offense level is 31.[24] Given his criminal history category of II, this results in a guidelines range of 121 to 151 months.[25] The Court must sentence Mr. Trent to a term of supervised release of not more than FIVE (5) years.[26] Finally, while the maximum fine is up to $250,000.00 each as

---

[21] Plea Agreement of October 23, 2019, ECF 1016 at page 5.

[22] This Guideline range is the calculation of counsel for Mr. Trent. The Presentence Investigation Report (hereinafter "PSIR") calls for Guideline range for of a term of life at ¶123 to which Mr. Trent objects.

[23] U.S.S.G. § 3E1.1(a).

[24] This Guideline range is the calculation of counsel for Mr. Trent. The Presentence Investigation Report (hereinafter "PSIR") calls for a combined adjusted offense level of 46 at ¶ 90 with a resultant total offense level of 43 to which Mr. Trent objects.

[25] The PSIR, at ¶ 123m calls for a guideline imprisonment range of life to which Mr. Trent objects.

[26] 18 U.S.C. § 3583(b)(1).

to Count I and Count XVI,[27] the fine range for the instant offense is $50,000 to $500,000.00.[28]

## IV.  18 U.S.C. § 3553(a) Factors

### A. Nature and Circumstances of the Offense

This is an extremely serious case and the criminal conduct for which Mr. Trent should be held accountable certainly can be characterized as gravely dangerous to the community in which he lived and committed those crimes. The racketeering conspiracy involving the Rollin 60s and Mr. Trent's involvement in the street shooting and attempted murder of Tyliek Conway is comparable to the type and scope of the criminal conduct that was associated with the lawlessness of the "wild, wild West."  That being said, Mr. Trent's conduct is materially different from the following defendant's, all of whom participated in the jury trial of this case prior to the pause (and subsequent end) of said trial due to the government's inexcusable and not to be condoned delay concerning the production of state grand jury testimony: Kevin Trent, Kanas Trent, Shabba Chandler, and Phillip Miles.[29] As is implicitly acknowledged by the United States when she authored the Statement of Facts upon which Mr. Trent's guilty plea is founded,[30] Dashaun Lamar Trent was not present at:  the murder of Christopher Motley and the attempted murder of Justion Wilson on August 20, 2016; or the attempted murder of Armonti Devine Womack and the

---

[27]   18 U.S.C. § 3571(b).

[28]   U.S.S.G. § 5E1.2(c)(3).

[29]   Defendant Marcus Jay Davis elected to proceed to trial and the testimony adduced therein is no doubt very familiar to the Court.

[30]   ECF 1018.

attempted murder of Dwight Montel Harris on June 15, 2016. Given the significant disparity of criminal conduct between Dashaun Lamar Trent and the other FOUR (4) co-defendants just mentioned, and which involves some of the most serious criminal conduct of the case, justice would indeed be served if this Court imposed a sentence of ONE-HUNDRED-FIFTY-SIX (156) months on Your Defendant. In strongly affirming the concept of individualized sentencing, Justice Thomas, in writing for the majority of the Supreme Court of the United States noted that:

> *The Guidelines were initially binding on district courts, but this Court in Booker rendered them "effectively advisory," Although the Guidelines remain "the starting point and the initial benchmark" for sentencing, a sentencing court may no longer rely exclusively on the Guidelines range; rather, the court "must make an individualized assessment based on the facts presented" and the other statutory factors. The Guidelines thus continue to guide district courts in exercising their discretion by serving as "the framework for sentencing, but they do not constrain that discretion."*[31]

Thus, even though the criminal conduct of this case is far outside the norm of criminal cases in this District, those defendants whose trial began in October of 2019 - with the exception of Marcus Jay Davis, and excluding Ashley Tiana Ross and Tenikqua Fuller, all accepted the offer of the United States to enter into Rule 11(c)(1)(C)) plea agreements with a range of punishment of 156 to 180 months. Therefore, the United States envisioned and

---

[31] *Beckles v. United States*, 137 S.Ct. 886, 894 (2017). [internal citations omitted]

indeed, by her tacit agreement as the author said agreement, contemplated that some number of the FIVE (5) defendants accepting the Rule 11(c)(1)(C) plea could receive sentence of 156 months. In other words, the existence of the range contemplated by the agreement suggests that the any sentence between 156 and 180 months would not be a miscarriage of justice. To suggest otherwise would an exercise in intellectual hypocrisy. Given Mr. Trent's conduct, as agreed to in his Statement of Facts,[32] as compared to those defendants who, by their signature to their respective Statement of Facts[33], while still very serious, comparatively speaking, is less egregious. The following facts, as set forth in each defendant's Statement of Facts, illustrate the comparative differences between Dashaun Lamar Trent and the other four defendants.[34]

-**Christopher Motely murder:**   Kevin Trent, Kanas Trent, Phillip Miles, Shabba Chandler -present.

-**Justion Wilson attempted murder :**   Kevin Trent, Kanas Trent, Phillip Miles, Shabba Chandler - present.

-**conspiracy to commit murder (Milla Bloods/Rollin 60s meeting):**  Phillip Miles

-**attempted murder of Dwight Harris/Armonti Womack:**   Kevin Trent, Phillip Miles,

-**attempted murder of Tyliek Conway:**  Dashaun Lamar Trent, Kevin Trent, Phillip Miles - present.

-**conspiracy to distribute controlled substances:**  Dashaun Lamar Trent, Kevin Trent, Kanas Trent, Phillip Miles, Shabba LaRun Chandler.

---

[32] ECF 1018.

[33] Kevin Lamont Trent, Jr. - ECF 975; Kanas Lamont'e Trent - ECF 979; Phillip Daekwon Miles - ECF 983; and Shabba LaRun Chandler - ECF 993.

[34] Kevin Lamont Trent, Jr., Kanas Lamont'e Trent, Phillip Daekwon Miles, and Shabba LaRun Chandler.

According to various the Statement of Facts, authored by the United States, the admissions of Kevin Trent, Kanas Trent, Phillip Miles, and Shabba Chandler, as to their own conduct, place each of them as a either a direct participant or being present at the murder of Christopher Motley which is certainly the most serious of the offense conduct in this case. The Statement of Facts upon which Dashaun Lamar Trent's guilty plea is based, does not contain any admission that he was either a participant or present at the murder of Christopher Motley or that he was a participant or present at the Philly Boys shooting. Thus, there is a continuum of "aggravated" criminal conduct as among these five defendants. It is respectfully submitted that Dashaun Lamar Trent is at a point in that continuum which suggests that a sentence of 156 months is "sufficient, but not greater than necessary" to serve the interests of justice. Such a sentence is well with this Court's discretion and conforms to individualized sentencing goals articulated by Justice Thomas in the *Beckles* case.

The United States, in her sentencing memorandum,[35] portrays Dashaun Lamar Trent as "a violent street gang member and a danger to society"[36] whose criminal activities "are heinous and represent some of the worst conduct prohibited by federal criminal law."[37] While one can imagine crimes such the terrorist attack on 9/11 and the Boston Marathon bombing as far worse in both scope and heinousness, the point is that it was the United States that decided to enter into an agreement, after she engaged in behaviour that was so detrimental to the notion of justice and fair play that this Court had to stop the trial for

---

[35] ECF 1258.

[36] ECF 1258 at page 1.

[37] *Id*. at page 6.

TEN (10) days.  During that interregnum, it was the sovereign who decided that the crimes of Dashaun Lamar Trent, and others, were, at the time not quote so "heinous" because she limited the FIVE (5) defendants' exposure to no more than 180 months in prison and even agreed to the possibility of 156 months in prison.  The government correctly points out, however, that "there can be no claim that sentences imposed within those ranges [156 to 180 months] is an unwarranted sentencing disparity."[38]  The undersigned counsel agrees and respectfully submits that a sentence of 156 would not be unwarranted.

Throughout the United States' sentencing memorandum she repeatedly makes claims that are inconsistent with the Statement of Facts which she drafted, endorsed, and presented to the Court as truthful.  For example, in the opening paragraph the United States claims that "Trent and the Rollin 60s Crips were responsible for the death of Christopher Motley . . . ."[39]

Notwithstanding the fact that the United States drafted, endorsed, and presented to the Court as truthful facts, she now claims apparent amnesia as to the content of Mr. Trent's Statement of Facts and offers the following statements as irrefutable facts because some other co-defendant said so: "Trent and the Rollin 60 Crips were responsible for the death of Christopher Motley;"[40] "Dashaun Trent joined with other Rollin 60 Crips and Milla gang members to shoot and kill Harris and Womack."[41]  Although Trent continues to deny

---

[38]   ECF 1258 at page 17.

[39]   ECT 1258 at page 1.

[40]   ECF 1258 at page 1.

[41]   *Id*. at page 3.

his being there, his own co-conspirators place him there."[42] "Again, Dashaun Trent refuses to admit being present at North Hills Court at the time of Christopher Motley's murder."[43] "Despite his refusal to admit otherwise, Dashaun Trent was actively involved in the gang's multiple violent shootings. First, Dashaun Trent participated in the shooting of the Philly boys on June 15, 2016."[44] "Importantly, Dashaun Trent was also present for the meeting on August 20, 2016, in which Marcus Davis issued a "greenlight" for the murder of any rival Billys gang member on sight."

If the United States believes these statements to be true, how, in good conscience can she, in a most heartfelt manner, point out that "Motley was the father of four young children, who will grow up without their father" and now claim, without the benefit of cross-examination of any witnesses, and with righteous indignation, that "Dashaun Trent refuses to admit being present at North Hills Court at the time of Christopher Motley's murder."[45] The government is trying to have it both ways. Faced with her own discovery/trial mis-steps, the United States decided publicly that whatever had happened on the streets of Danville, the crimes of Dashaun Trent and others warranted a prison sentence of from 156 to 180 months. Now, nearly 10 months later, the sovereign seeks to position herself as a white knight sent to protect society from Dashaun Lamar Trent and cloaks her argument as if a trial had taken place to determine certain facts which, at the time of his guilty plea, were not sufficiently important to include in his Statement of Facts. Suddenly, the "facts"

---

[42]   *Id*. at page 4.

[43]   *Id*. at page 5.

[44]   *Id.* at page 8.

[45]   ECF 1258 at page 5.

upon which the United States now relies have grown exponentially and portray Dashaun Lamar Trent in a far, far worse light.  To now utilize the sentencing memorandum as opportunity to re-write history, with no real check on what is or is not the truth (such as cross-examination), by repeating over and over words to the effect of "Dashaun Trent continues to refuse to admit to the murder of Christopher Motley, participation in the Philly Boys shooting, and being present at the murder-planning meeting on August 20, 2016, etc." is an affront to justice when one considers that it was the government who was in total control of the drafting of the Statement of Facts and could have told Dashaun Trent to either admit to the murder of Motley and the Philly Boys shooting or go to trial.  Faced with all the facts and circumstances as were then known the United States, the sovereign chose the path of least resistance and convenience over proving beyond a reasonable doubt what she now says is the truth.

In an exercise which strains credulity, the government correctly points out that Dashaun Trent clocked out of his job at 22:21 hours on August 20, 2016.  Next, the government, relying on Google Maps, says that it is an eight-minute drive, from Mr. Trent's employer (KFC) to North Hills Court.  Assuming, absurdly, that at the very moment he clocked out he was able to get in a car and start driving toward the murder scene, under the government's theory, he would arrive at North Hills Court at 22:29 hours.  If the first 911 calls for "shots fired" went out at 22:27 hours (which means that the shots were fired at some point prior to 22:27 hours) then Mr. Trent would have arrived at North Hills Court a full TWO (2) minutes after the first 911 call.  Again, this whole exercise strains credulity and belies the government's willingness to present a Statement of Facts totally devoid of any

mention of Dashaun Trent participating or being present at the murder of Christopher Motley.

Finally, as regards Dashaun Trent's TWO (2) convictions for shooting into an occupied vehicle, it worth noting that in her plea agreement with Your Defendant, the United States agreed to language allowing him to "request at the time of sentencing that [his] federal sentence run concurrently to any state sentence in *Commonwealth v. Trent* . . . and that the United States **will not object to this request**."[46] Now the United States claims that this "shooting confirms that Trent is a danger to society and that only incarceration will stop his violent conduct."[47] If it's true, which the government now claims, "that only incarceration will stop his violent conduct"[48] then why did the United States abandon the path to a life sentence for this "violent street gang member [who is] a danger to society" and who "for his criminal conduct terroriz[ed] the citizens of Danville with his violent gang participation?" The answer is simple. The government acts one way and with one philosophy when it suits the agenda for that day and then acts in a manner inconsistent therewith when the first course no longer suits their agenda. In October of 2019, the government's case, from her perspective was a dumpster fire that had to be extinguished at all cost. There was little heed paid to Christopher Motley's "four young children, who will now grow up without their father."[49] The "endangerment of countless

---

[46]   Plea Agreement, ECF 1016 at page 5.

[47]   ECF 1258 at page 11.

[48]   *Id*.

[49]   ECF 1258 at page 5.

innocent citizens of Danville"[50] was, at that time, pushed to back burner for expediency and for achieving the goal of getting past the trial that had become a "dumpster fire" before it became a "forest fire." Now, with the passage of time, and no real structural check on what the facts may or may not actually be, the children of Christopher Motley and terrorized citizens of Danville are once again front and center and on full display in the sovereign's noble to quest for justice.  The righteous indignation by the United States should be looked at through the entire scope of this case and, in particular, through the lens of various Statements of Facts which are all inconsistent with each other and were drafted to suit the government's then immediate need to end the chaos of their own case and of their own making.

That is not to say, which the undersigned counsel pointed at earlier, that Dashaun Trent's conduct, for which he entered a plea of guilty upon the foundation of the Statement of Facts as drafted, endorsed, and present to the Court as truthful, was extremely dangerous and at the serious end of the continuum of criminality in general. This defendant has engaged in criminality which is cannot and should not be tolerated in any civilized society.  It was reckless, dangerous, and without concern for the well-being of others.  The United States puts the matter differently and conflates the issue of "tolerance" with the Court's discretion to sentence within a range as agreed to by the government. The United States posits that "[t]he Court cannot tolerate behavior that physically and psychologically harms others in such significant ways."[51] That is not the correct question.  Nobody, including the undersigned counsel, can rationally suggest that this Court, or indeed the

---

[50]   ECF 1258 at page 1.

[51]   ECF 1258 at page 7.

- 15 -

whole of civilized society, should tolerate the kind of behaviour for which Mr. Trent has entered guilty pleas and accepted responsibility.  The only question before this Court is whether Dashaun Trent should receive 156 months or something greater but not more than 180 months.  The United States, by agreeing to the low end of the range of 156 tacitly admits that such as sentence, if the Court were to be so advised, would not send a signal that it is "tolerating" the kind of behaviour that "physically and psychologically harms others in such significant ways."[52]  In a further display of the intellectual hypocrisy of the position now being taken by the United States, she passionately writes that "[t]he community needs to be protected from Dashaun Trent's violence and any sentence less than 180-months puts society at risk."[53]  And to "double down" on that point, the government then proclaims that [e]ven the difference of two years can mean the difference in the life or death of others in Danville."[54]  Really? A two year difference is significant to that exaggerated degree? In other words, *Judge, if you sentence Trent to 156 months (which we agreed was a just and appropriate sentence albeit at the low end of the range) then you, the Court, might be responsible for death of some citizen of Danville.*  If the government really believed such hyperbole, she would have never agreed to either a low-end of the range or to the Statement of Facts as written and agreed upon - by her.  Never mind that government could have also presented a Rule 11(c)(1)(C) plea for 180 months, or, more in keeping with today's arguments, could have chosen to not abandoned the path to a life sentence and

---

[52]    ECF 1258 at page 7.

[53]    ECF 1257 at page 13.

[54]    *Id*.

told Mr. Trent to gear up for trial. She chose none of those alternatives. As such, the arguments being presented today ring somewhat hollow.

### B. Characteristics of the Defendant

Mr. Trent is 26 years old. He was born in Danville, Virginia. Unfortunately for Mr. Trent, his mother was a drug addict and his father went to prison when he was six years old. Fortunately for Mr. Trent, his grandmother, Alle Edmonds was the person primarily responsible for raising him. She lovingly provided for him as best she could. Not surprisingly, against the back drop of his parental instability, Dashaun Trent began using marijuana at the age of thirteen and began drinking alcohol at the age sixteen. There can be no doubt that substance abuse would be of great benefit to Mr. Trent. The RDAP program within the Bureau of Prisons, if he is eligible, will be an excellent opportunity for Mr. Trent to gain insight into his substance abuse and, more importantly, how to escape from its clutches.

Mr. Trent graduated from George Washington High School in 2012 with a GPA of 2.28 and attended some college at Danville Community College. Further educational opportunities and vocational training while in the Bureau of Prisons will also serve Mr. Trent well. Given that he is not married and has not fathered any children, Mr. Trent will be able to focus on his own rehabilitation, substance abuse issues, and education to a degree that should allow him the best chance of a successful term of imprisonment as regards his own growth and insight into his own behviour. Mr. Trent will not have to endure the stress of worrying about spouses or girlfriends and/or children all of whom can impede an incarcerated person's path to success.

### C. Kinds of Sentence Available and Guidelines Recommendation

The maximum punishment for Mr. Trent's offense is imprisonment for a term of life as to Count I and TEN (10) years as to Count XVI. It is respectfully requested that the Court impose sentence of ONE-HUNDRED-FIFTY-SIX (156) months and recommend that he participate in the RDAP program within the Bureau of Prisons plus a term of supervised release of not greater than FIVE (5) years.

### D. Avoiding Unwarranted Sentence Disparity

18 U.S.C. § 3553(a) speaks of the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The provision seeks uniformity in a broad sense but not at the expense of an individualized sentence based on the circumstances of the offense and the background of the defendant. As to whether or not Mr. Trent has insight and awareness of the nature and consequences of his criminal conduct, the Court will have to make that determination at the time of sentencing.

Imposing a sentence of not greater than ONE-HUNDRED-FIFTY-SIX (156) months would be just and would avoid a sentencing disparity when balancing Mr. Trent's actual criminal conduct in this case against other, more culpable defendants.

### E. Purposes of Sentencing Under 18 U.S.C. § 3553(a)(2)

Congress has recognized four purposes of sentencing, often summarized as punitive, general deterrence, specific deterrence/incapacitation, rehabilitation.[55] Mr. Trent submits that a sentence of ONE-HUNDRED-FIFTY-SIX (156) months plus a term of supervised release is a fair and reasonable one under the circumstances and comports with Congressional intent as regards sentencing. A sentence of ONE-HUNDRED-FIFTY-

---

[55] 18 U.S.C. § 3553(a)(2).

SIX (156) months is not insubstantial and certainly sends a strong message of deterrence and provides Mr. Trent with ample to fully rehabilitate himself by participating in any number of educational and vocational programs that will be available to him whilst in the custody of the Bureau of Prisons. There can no question that such a sentence will comport with society's interest in retribution since it is "sufficient, but not greater than necessary" to achieve justice all the more so when the Court considers that the United States agreed to the possibility of such a sentence.

### V. Conclusion

For all of the reasons stated herein, Dashaun Lamar Trent respectfully submits that a sentence of a ONE-HUNDRED-FIFTY-SIX (156) MONTHS, plus a term of supervised release, is "sufficient, but not greater than necessary" to comply with the purpose of 18 U.S.C. § 3553.

        Respectfully submitted,

        Dashaun Lamar Trent

        By/s /  Chris K. Kowalczuk

Christopher K. Kowalczuk, Esq.
P. O. Box 11971
Roanoke, VA 24022-1971
    Counsel for Defendant

Patrick John Kenney, Esq.
1031 First Street, SW
Roanoke, VA 24016
    Counsel for Defendant

**CERTIFICATE OF SERVICE**

I, Christopher K. Kowalczuk, Esq., hereby certify that on this 4th day of August, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

s/    Chris K. Kowalczuk